CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 2 6 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

LARRY DONNELL MOSLEY,    )
    Plaintiff,             )       **Civil Action No. 7:06cv731**
                       )
v.                     )       **MEMORANDUM OPINION**
                       )
T.L. DOOLEY, et al.,      )
    Defendants.         )       **By: Hon. Jackson L. Kiser**
                     )       **Senior United States District Judge**

Plaintiff Larry Donnell Mosley ("Mosley"), a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Named as Defendants are Lynchburg Police Officers T.L. Dooley, W.C. Ballagh, and P.H. Snead. Chris Webb, Administrator of the Blue Ridge Regional Jail Authority, and Thomas Dobyns, M.D., are also named as Defendants in the Complaint. Mosley alleges that the officers used excessive force when arresting him on two separate occasions. He further alleges that the injuries he received during these arrests were not treated in a timely manner. Mosley seeks monetary compensation for his physical injuries and lost property and also appears to request injunctive relief. Pl.'s Compl. 2. On April 9, 2007, Defendants Dooley, Ballagh, and Snead filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment as to Mosley's § 1983 claims.[1] On that same date, Defendants Webb and Dobyns filed a Motion to Dismiss. Mosley has responded[2], making the Motions ripe for the court's consideration. Upon review of the record, I will grant Defendants'

---

[1] The Defendants attached declarations by the officers and relevant reports to the Motion and referred to these exhibits in their brief in support of that motion. Consequently, I will treat the Motion to Dismiss as a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

[2] On May 3, 2007, Mosley filed a Response in opposition to the Defendants' Motions and also filed a Motion to Separate and Decide Issue on Lost Glasses Aside from Other Issues.

1

Motions.

## I. Plaintiff's Allegations

Mosley alleges that his claims arise from injuries that he received during arrests on two separate occasions. On July 1, 2006, Mosley was apprehended for felony shoplifting by several members of the Lynchburg Police Department, including officers Dooley, Ballagh, and Snead. During Mosley's arrest, he alleges that he was sprayed with pepper spray, punched in the head, choked, his "arms and legs were twisted," and he was beaten in the shoulder with a "steel baton." Pl.'s Supp. Facts 1. Mosley claims that these actions by the officers resulted in several injuries including a torn ligament in his left hand, pinched nerves in his left shoulder, and bruising and swelling. Mosley further claims that when Officer Dooley transported Mosley to the Lynchburg Police Station he spoke to Mosley in a "demeaning manner" that caused and continues to cause Mosley to experience "lowly feelings" and depression.[3] Pl.'s Supp. Facts 1. Mosley also lost a pair of glasses during this incident.[4] On July 11, 2006, Mosley was again apprehended for felony

---

[3] The record clearly indicates that Officer Dooley did not transport Mosley to the police station on this occasion. Regardless, citizens do not have a constitutional right to courteous treatment by the police. Verbal harassment such as that alleged in the present case does not rise to the level of a constitutional claim. See Sofer v. State of N.C. Hertford Police Dept., No. 91-7024, 1991 WL 107545 (4th Cir. June 21, 1991); Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C.), aff'd 917 F.2d 1302 (4th Cir. 1990) (finding that subjection of prisoner to verbal abuse or profanity does not rise to level of constitutional deprivation cognizable in a civil rights action); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987) (finding that verbal harassment and abusive language, while "unprofessional and inexcusable," are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983). Accordingly, I find that Mosley has failed to state a cognizable claim under § 1983 as to this issue.

[4] The Supreme Court has made it clear that § 1983 is not intended to be used as a substitute for state tort law remedies. Baker v. McCollan, 443 U.S. 137, 146 (1979); Wallace v. Chrysler Credit Corp., 743 F. Supp. 1228, 1236 (W.D. Va. 1990). The intentional or negligent deprivation of personal property by a police officer or prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation, so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). Given that the conduct is unauthorized, it would be impracticable for the state to provide a pre-deprivation hearing or other process. Hudson, 468 U.S. 517 (1984). Therefore, an adequate post-deprivation remedy, such as a prison grievance procedure or a state tort claim, suffices. Id. State law remedies, including the Virginia Tort Claims Act, are available to Mosley as a means to seek compensation for his alleged loss. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (holding that the Virginia Tort Claims Act and Virginia's tort laws provide an

2

shoplifting and for allegedly threatening witnesses with a knife. In the course of that arrest, Mosley alleges that he was hit with a baton by Officer Snead and dragged "violently" and with his arms "bent forward of [his] body" from a wooded area by several officers causing injury to his arms and shoulders. Pl.'s Supp. Facts 3; Pl.'s Compl., Ex. C, 3. Mosley alleges that "this pulling on my arms and the baton has left me with still more physical pain and problems that persist even to this day." Pl.'s Compl., Ex. C, 3. Mosley claims that Officer Dooley, once again, spoke to him in an abusive manner.

Mosley was transferred to the Lynchburg Adult Detention Center on July 11, 2006, following the two arrests. Mosley claims that he immediately requested medical attention but that his injuries were not "treated in any timely manner . . . under the administration of Chris Webb" and that they were not all adequately addressed by Dr. Thomas Dobyns. Pl's Compl. 2. In particular, he claims that several injuries have remained "undiagnosed," including pinched nerves in his left shoulder, swollen feet resulting in ruptured skin around his feet and ankles, hypertension, depression, and headaches.[5] Pl.'s Supp. Facts 6. Mosley claims that the medical problems Dr. Dobyns did attempt to address "are still very much troublesome and are not healing at any acceptable rate" and that Dr. Dobyns has failed to adequately "follow-up on his treatment or assessment of the problems." Pl.'s Supp. Facts 6. Mosley claims that he is subject to "'constant pain,'" "'physical disabilities,'" and

---

adequate remedy); Ballance v. Young, 130 F. Supp. 2d 762, 767 (W.D. Va. 2000); See Whorley v. Karr, 534 F. Supp. 88 (W.D. Va. 1981) (finding that state prisoner had not been deprived of property without due process of law and thus could not maintain action under civil rights statute against police officers for loss of his watch following arrest, where Virginia state law provided prisoner with a remedy, whether defendants negligently lost or stole the watch). Accordingly, inasmuch as Mosley has adequate state remedies, I find that he has failed to state a cognizable constitutional claim regarding his lost or missing glasses.

[5] Mosley claims that these medical problems have remained "undiagnosed" because Dr. Dobyns allegedly informed Mosley during his first medical visit that he would only address the three injuries that required the most immediate attention.

3

"'[t]he mental anguish and anxiety'" of the possibility of being unable to care for himself upon release. Pl.'s Supp. Facts 8. Mosley alleges that Dr. Dobyns has "dissuaded" him from seeking any further medical assistance and consequently has "separated [Mosley] from any substantial medical treatment and diagnosis of [his] serious injuries." Pl.'s Supp. Facts 8. Finally, Mosley claims that because Mr. Webb has "personally done nothing" to ensure that Mosley's medical needs have been properly addressed, he has demonstrated deliberate indifference to Mosley's medical needs. Pl.'s Supp. Facts 9.[6]

## II. Analysis

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Section 1983 does not confer substantive rights; rather, it provides a method by which an individual can vindicate substantive rights conferred elsewhere. Albright v. Oliver, 510 U.S. 266, 271 (1994).

### III. Claims Against the Officers

#### A. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

---

[6] Also interspersed throughout Mosley's § 1983 Complaint and Supplemental Pleading are several claims concerning the insufficiency of the evidence presented at trial. In Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court clearly stated that, "Congress has determined that habeas corpus is the appropriate [and exclusive] remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." See Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983). Thus, I find that Mosley's insufficiency of the evidence claims are more appropriately filed as a petition for a writ of habeas corpus and decline to address them here.

4

Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 247-48. In reviewing the record on summary judgment, the court is required to resolve all genuine disputes as to any material facts in favor of the plaintiff, the non-moving party. See Id. at 255. While the court must construe factual allegations in the nonmoving party's favor and treat them as true, it need not treat the plaintiff's legal conclusions as true. See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (finding that a court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).

## 1. Excessive Force Claims

The court must analyze claims of excessive force during arrest under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997) (holding that the Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person) (en banc). "[R]easonableness" of a particular use of force "must be judged from the perspective of the officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. Also, the "calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Id. at 396-97. Furthermore, the court must determine "whether the police officers' actions were 'objectively

5

reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

Thus, the objective reasonableness test requires careful attention to the circumstances of a particular case. Factors to consider in this analysis include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he actively resisted arrest or attempted to evade arrest by flight. Id. at 396; Bailey v. Kennedy, 349 F.3d 731, 744-45 (4th Cir. 2003). Significantly, "[i]t is also well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest." Brown v. Gilmore, 278 F.2d 362, 369-70 (4th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 208 (2001)).

**a. July 1, 2006 Arrest**

I find that the force employed by the officers in arresting Mosley on July 1, 2006, was not disproportional and that they acted objectively reasonably in light of the circumstances confronting them. The severity of the crime, as discussed supra, weighs in favor of the officers, as they had a "reasonable suspicion that criminal activity was afoot" when they were informed by radio that an individual matching the description of Mosley had recently stolen several items from a local supermarket. See Turmon v. Jordan, 405 F.3d 202, 208 (4th Cir. 2005). When they attempted to make contact with Mosley he fled. Second, the record reveals that, during the struggle, Mosley continually refused to comply with the officers' verbal orders to let go of his front waistband with his left hand, suggesting to the officers that he was concealing a weapon in his pants. Ballagh Ex. Decl. 2. Mosley does not deny that he refused to comply with the officers' orders nor does he deny that he kept his hands near his waistband despite the requests and physical attempts to remove his

6

hands from that area. Mosley could have posed an immediate threat to the officers' safety, a reasonable assumption when he refused to obey the orders to remove his hands from around his waistband area. Third, Mosley admits that he was attempting to flee from the officers and was resisting arrest. In an attachment to his Complaint he writes, "I veered off into a yard to elude the officers in the first car I encountered . . . I attempted to throw my bicycle over a fence and then jump the fence [when] . . . a trainee . . . grabbed my leg. While the officers were trying to handcuff me I was trying to get my new prescription glasses off the ground." Pl.'s Compl., Ex. C, 1.

Furthermore, the allegation that Mosley was injured does not alter the conclusion that the officers' actions were reasonable under the circumstances. Although Mosley concludes that his self-diagnosed pinched nerves and torn hand ligament are a result of the officers' actions, he offers no factual support for this conclusory assertion. Thus, even assuming for the sake of argument that their actions led to Mosley's injuries, I find that the actions do not constitute excessive use of force, and that this claim fails. I find that a reasonable officer in the same circumstances would have concluded that the threat presented justified the force used; thus, the officer's exertion of force did not violate the Fourth Amendment and Defendants' Motion for Summary Judgment will be granted as to this claim.

**b. July 11, 2006 Arrest**

I also find that the Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them at the time of the July 11, 2006 arrest. The severity of the crime weighs in favor of the officers even more so than the prior arrest because the officers were warned that the suspect had brandished a knife or a box-cutter during the shoplifting incident. Snead Ex. Decl. 2. Also, the record reveals that, once again, Mosley refused to comply with the officers' orders

7

to get down on the ground in a prone position with his hands behind his back. Mosley admits that the officers repeatedly requested that he "get down . . . all the way down" but that he refused to comply because there were "rocks, short sticks . . . rock fragments and grass" directly beneath him. Pl.'s Compl., Ex. C, 3. Furthermore, the incident reports reveal that Mosley's right hand was not in view during the officers' approach. It was not unreasonable for the officers to assume that Mosley potentially posed an immediate threat to their safety because he refused to obey their orders as they approached and they had been warned that he could possibly be carrying a weapon. The record also reveals that Mosley had been fleeing from the officers for a significant period of time and struggled with the officers as they attempted to place him in handcuffs. Marks Ex. Decl. 9-11.

Furthermore, I find no evidence of any injury sustained by Mosley during this incident. Conclusory statements of "physical pain and problems," without more, are insufficient to state a claim. Pl.'s Compl., Ex. C, 3; Custer, 89 F.3d at 1163. Regardless, I find that the force used by the officers to subdue Mosley and to protect themselves against any potential harm was objectively reasonable in light of the circumstances and did not violate Mosley's Fourth Amendment right to be free from excessive force during an arrest. Accordingly, I grant Defendants' Motion for Summary Judgment as to this issue.

### IV. Claims Against Webb and Dobyns

#### A. Standard of Review

A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of the plaintiff's claim that would entitle the plaintiff to relief. Fed. R. Civ. P. 12(b)(6); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the

8

plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted, however. See Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendants to prepare a fair response. Conley, 355 U.S. at 47. In addition, when reviewing a pro se complaint, a court must carefully examine the plaintiff's allegations, no matter how inartfully pleaded, to determine whether they could provide a basis for relief. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

**1. Deliberate Indifference Claims**

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir.1997). Generally, an allegation of mere negligence as to an inmate's health and safety is not actionable under §1983. See Daniels v. Williams, 474 U.S. 327 (1986); see also Davidson v. Cannon, 474 U.S. 344 (1986); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that even negligence or malpractice in the provision of medical services does not constitute a claim under § 1983). Moreover, questions of medical judgment are not subject to judicial review, Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975), and disagreements between an inmate and medical personnel over diagnosis or course of treatment do not state cognizable constitutional claims

9

under the Eighth Amendment. Wright, 766 F.2d at 849; Estelle, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care; rather, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Indeed, in the context of short-term prisoners (a category in which plaintiff apparently is properly classified, being an inmate at the Lynchburg Adult Detention Center), states may deny inmates elective medical treatment. Kersh v. Bounds, 501 F.2d 585, 588-89 (4th Cir. 1974). Finally, to bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).[7]

Applying these principles, I conclude that Mosley has failed to state a claim for deliberate indifference to a serious medical need. It is clear from the record that Mosley has been provided substantial medical treatment at the Lynchburg Adult Detention Center. Commissary records submitted by Mosley reveal that he visited the medical ward sixteen (16) times during the three month period following his incarceration. Pl.'s Compl., Attachm. A, 2. Mosley's pleadings also reflect that Dr. Dobyns examined and treated Mosley on numerous occasions. Dr. Dobyns even referred Mosley to an orthopedic specialist to have rehabilitative therapy, but the specialist

---

[7] Inasmuch as Mosley may be a pre-trial detainee (his Complaint is unclear as to this point), his claim would be evaluated under the Due Process Clause instead of the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. Accordingly, in evaluating the constitutionality of conditions of confinement for pretrial detainees, the court must determine whether the challenged conditions amount to punishment. Id. Unless the detainee plaintiff can show that officials intended to punish him through conditions of confinement, conditions cannot be considered punishment so long as they are rationally connected to a legitimate, nonpunitive penological purpose and are not excessive in relation to that purpose. Id. Mosley has not made any such showing.

10

determined that further treatment was not needed. While Mosley may disagree with the manner in which Dr. Dobyns has assessed or treated his medical problems, such a disagreement fails to state a claim for deliberate indifference. See Russell, 528 F.2d at 319; Wright, 766 F.2d at 849. Even assuming that Dr. Dobyns acted negligently in diagnosing or treating Mosley's medical problems, neither negligence nor malpractice is actionable under § 1983 and Mosley alleges no exceptional circumstances which meet the standard of deliberate indifference to serious medical needs required for § 1983 liability. Finally, as Mosley fails to allege any direct involvement by Administrator Webb in his medical decisions, he has no basis for a claim against Administrator Webb. Accordingly, I find that Mosley has failed to state a claim under the Eighth Amendment against either Administrator Webb or Dr. Dobyns because he has not shown that either Defendant was deliberately indifferent to any serious medical need.

## V. Conclusion

For these reasons, the officers' Motion for Summary Judgment is granted. I further find that Administrator Webb and Dr. Dobyns' Motion to Dismiss is granted and the Complaint is hereby dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

11

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to Plaintiff and to counsel of record for the Defendants, if known.

**ENTER**: This 26th day of June, 2007.

Senior United States District Judge

Case 7:06-cv-00731-JLK-mfu   Document 20   Filed 06/26/07   Page 12 of 12   Pageid#: 157